UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE BURGOS,

                              Plaintiff,

                                                        Case # 13-CV-6533-FPG

v.

                                                        DECISION AND ORDER

P.O. RANDALL GRENIER,
P.O. NICHOLAS BIELOWICZ,
GENEVA POLICE CHIEF JEFFREY E. TRICKLER,
Each Individually & In Their Representative Capacity, and
THE CITY OF GENEVA,

                              Defendants.

Plaintiff Michelle Burgos, represented by counsel, brings this action under 42 U.S.C. § 1983, alleging that the Defendants violated her civil rights. Dkt. #1. Two of the named defendants, Geneva Police Chief Jeffrey Trickler ("Chief Trickler") and the City of Geneva, have moved to dismiss Plaintiff's Complaint as to them under Federal Rule of Civil Procedure 12(b)(6). Dkt. #7. Because Plaintiff has failed to allege any facts regarding Chief Trickler or the City of Geneva that could plausibly entitle her to relief, the motion is granted, and Chief Trickler and the City of Geneva are dismissed from this action.

## BACKGROUND

The Complaint in this action alleges that on August 8, 2012, Defendant Geneva Police Officers Randall Grenier and Nicholas Bielowicz unlawfully entered Plaintiff's home, and forcibly placed her against the wall. Dkt. #1. Officers Grenier and Bielowicz then searched Plaintiff's body, handcuffed her, arrested her, and transported her to the police station. *Id.* At the police station, Plaintiff was handcuffed to a wall where the officers assaulted her by twisting her arms and wrists, causing injuries that required immediate emergency care. *Id.* The Complaint further alleges that no probable cause existed to arrest, search or detain Plaintiff, and

that at no time did Plaintiff resist arrest. *Id.* Plaintiff alleges that Chief Trickler and the City of Geneva are liable to her for failing to properly train the officers of the Geneva Police Department, for creating or permitting policies and procedures that caused her injuries, and for failing to correct the allegedly improper polices of the Geneva Police Department. *Id.*

Officers Grenier and Bielowicz have answered the Complaint (Dkt. #9), while Chief Trickler and the City of Geneva have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), claiming that the Complaint is insufficient as a matter of law in that the allegations of the Complaint do not survive under established Supreme Court precedent (Dkt. #7). The Plaintiff has responded to the motion (Dkt. #10), after which the moving Defendants filed a reply memorandum (Dkt. #11).

## DISCUSSION

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. In considering the plausibility of a claim, the Court must accept

2

factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.")

A complaint alleging a § 1983 violation must contain enough facts to show that the defendant acted under color of state law and that the conduct complained of "deprived the plaintiff of a right guaranteed in the [C]onstitution or laws of the United States." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). In the case of a supervisory defendant, it is well settled that a supervisor may not be held liable in a § 1983 action on a theory of *respondeat superior*. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. In other words, "supervisor liability depends on a showing of some personal responsibility," *Hernandez,* 341 F.3d at 144, and a plaintiff must plead sufficient facts to establish the personal involvement of each particular defendant in the alleged violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

In order to establish the personal involvement of a supervisory official, a plaintiff can demonstrate that: (1) the defendant participated directly in the alleged conduct; (2) the defendant did not remedy a wrong after learning of it through a report or appeal; (3) the defendant formed a

policy or custom under which the conduct transpired, or allowed the policy or custom to continue; (4) the defendant's supervision of subordinates who engaged in the conduct was grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of inmates by failing to act on information showing that the conduct was occurring. *Colon*, 58 F.3d at 873.

Regarding the municipal Defendant City of Geneva, although municipalities are considered "persons" for purposes of 42 U.S.C. § 1983, a local government, such as the City of Geneva, may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted).

In deciding motions to dismiss, the Supreme Court has authorized district courts to start their analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

In *Iqbal v. Ashcroft, supra*, Plaintiff Jahvid Iqbal was arrested and detained on federal criminal charges in the wake of the September 11, 2001 attacks. He claimed that he was deprived of certain constitutional rights while in federal custody, and brought suit against several individuals, including John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the then-director of the Federal Bureau of Investigation. Mueller and Ashcroft

4

moved to dismiss the complaint as against them, arguing that the allegations were insufficient to demonstrate their own personal involvement in the alleged wrongs. The district court and the United States Court of Appeals for the Second Circuit found the allegations to be sufficient, but the Supreme Court disagreed. As described by the Supreme Court, the Complaint in that case alleged that

> [Mueller and Ashcroft] designated [Plaintiff] a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution. The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation.

*Iqbal*, 556 U.S. at 669. (internal citations omitted).

The Supreme Court concluded that the allegations made in plaintiff's complaint against Ashcroft and Mueller consisted of "bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements of a constitutional discrimination claim'... the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (internal citations omitted). Because there were insufficient facts in the complaint once the conclusory allegations were stripped away, the Supreme Court held that Iqbal had "not 'nudged [his] claims across the line from conceivable to plausible,'" *Iqbal*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at 570, and dismissed Ashcroft and Mueller from the case.

The allegations of Plaintiffs' Complaint in this case against the City of Geneva and Chief Trickler suffer from the same fatal flaw as those identified by the Supreme Court in *Iqbal* and

*Twombly*: they consist only of bare assertions, conclusions and formulaic recitations, without the necessary factual support.

Regarding the City of Geneva, the Complaint in this case alleges that "[t]here exists within the Geneva Police Department policies or customs, practices and usages that are so pervasive that they constitute the policy of the Department, that caused the constitutional deprivations of the Plaintiff." Dkt. #1, ¶ 38. Similar to the allegations in *Iqbal* that the Supreme Court found to be insufficient, the allegation stated in paragraph 38 of the Complaint here contains no factual support, and instead recites the legal standard required for the proposed cause of action. The Complaint attempts to build upon this allegation in the next paragraph, where it claims that certain policies exist in the Geneva Police Department. Paragraph 39 of the Complaint alleges that the Geneva Police Department has "policies, customs, practices and usages that exist" as follows:

A)   To physically assault and strike citizens at will, without regard for the need of force, and without regard for the legality of its use.

B)   To unlawfully strike citizens who have been subdued and handcuffed.

C)   To unlawfully engage in searches and seizures of persons and places while acting under color of law.

D)   To file and prosecute cover charges in encounters with citizens in which the officer or officers have improperly used force, or excessive force; such charges and prosecutions are used to justify the use of force and to protect police officers from liability for their improper conduct.

E)   To conspire with others in the prosecution of such cover charges.

F)   To act individually and to conspire with others to prevent the truth about the violence and transgressions of the other officer or officers from being know, by lying or by failing to report such transgressions.

G)   To use private cell phones to communicate with each other while on duty in order to avoid creating official recordings of their activities and communications where improper conduct occurs.

H)   To intentionally supervise, manage and review disciplinary complaints involving police misconduct in such a manner that legitimate citizen complaints almost never result in censure or discipline.

I)   To propogate [sic] such practices and customs with knowledge that citizens would suffer harm, as the police officers operated under the belief that they would never suffer reprisal for their misconduct.

The Complaint further alleges that the City of Geneva failed to properly train the officers of the Geneva Police Department, that the City of Geneva should have been aware of the previously enumerated policies, customs and practices, and that the City of Geneva failed to remedy the situation. *See* Dkt. #1, ¶¶ 40-48, 63[1].

What is missing from these paragraphs – and is also not found elsewhere in the Complaint as it relates to the City of Geneva or the Geneva Police Department – is any factual support for these allegations.   Every one of the lettered statements in paragraph 39 of the Complaint is a threadbare, conclusory statement devoid of even a single fact to support it, and the allegations in the other paragraphs of the Complaint regarding the City of Geneva suffer from the same flaw.   In other words, these allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.   As a result, they cannot establish a plausible claim against the City of Geneva.

Regarding Chief Trickler, the Complaint also fails to recite any specific facts that would demonstrate Chief Trickler's personal involvement in the complained of actions.   Instead, the Complaint generally alleges that Chief Trickler failed to properly train the officers of the Geneva Police Department, that Chief Trickler should have been aware of the previously enumerated policies, customs and practices, and that he failed to remedy the situation. *See* Dkt. #1, ¶¶ 49-57, 63.   Just like the claims against the City of Geneva, the claims against Chief Trickler are also without any factual support, and merely consist of threadbare recitals of a cause of action stated in conclusory form.   Based upon the authorities previously stated, those allegations cannot establish a plausible claim against Chief Trickler.

---

[1] Paragraph 63 of the Complaint also alleges that Chief Trickler and the City of Geneva are liable for the actions of Defendants Grenier and Bielowicz "under the theory of respondeat superior and vicarious liability."   However, it is well settled that "*[r]espondeat superior* or vicarious liability will not attach [in actions brought] under § 1983." *Collins v. City of Harker Heights, Tex.*, 503 U.S. at 123 (citation omitted).

To summarize, the allegations that Plaintiff makes in her Complaint against Chief Trickler and the City of Geneva are exactly what the Supreme Court has found to be insufficient, in that they are only conclusory, threadbare and formulaic recitations of a cause of action, without any supporting factual allegations. Rather than alleging facts that could "nudge[] [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, Plaintiff has instead provided no facts to support her claims against Chief Trickler and the City of Geneva, and as a result, the causes of action against them cannot survive.

## CONCLUSION

For the foregoing reasons, Chief Trickler and the City of Geneva's Motion to Dismiss the Complaint as against them (Dkt. #7) is GRANTED. The Clerk of the Court shall terminate Chief Trickler and the City of Geneva as defendants in this action.

IT IS SO ORDERED.

Dated: July 29, 2014
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge